They have arguments today for different cases, and we have some internal timing issues that we need to deal with. So what that means is that everybody gets their allotted time for arguments, but we're going to ask that you stick to the allotted time and all, and I'll keep track of that as well. We're going to hear three arguments this morning, and then the bench is going to retire for brief deliberations, and then we'll be back at about 15 to 20 minutes later, and we'll hear the last case, the Quake case, at that point in time. So we'll hear that around 12.50, maybe 1 o'clock, or 12 o'clock, rather. And so, unless there's not any questions from the parties. Okay, so our first case today is TQ Delta, LLC v. Cisco Systems, Inc., Dish Network, Comcast Cable Communications, and et al. And the number of the cases is 2018-1766 through 1767. So we're all set. Good morning, Your Honors, and may it please the Court. The final written decisions in the 1020 and 1021 matters should be overturned for at least three reasons. First, there is not substantial evidence of record to support the Board's finding on motivation to combine. One of ordinary skill in the art would not have recognized any problem with the primary reference, which is Shively, that required fixing. Shively does not have any problems caused by an increased or high peak-to-average power ratio, which we refer to as PAR, that would have benefited in any way from a PAR reduction technique. Second, even if there was a problem, and there isn't, it was only through hindsight and the conclusory opinion of Petitioner's expert, not substantial evidence, that the Board concluded that one of skill in the art would look to combine Shively with a PAR-reducing phase-scrambling technique. And third, to stop the reference... What else besides the expert's testimony do we need to affirm based upon a substantial evidence ground? I mean, the expert gave a declaration. He explained why he would combine these two references. Isn't that substantial evidence for the Board's finding? Your Honor, it's not substantial evidence when you consider the totality of the record, and the totality of the record must be considered, and the panel below must address the full record. And what the full record discloses is that the Petitioner's expert, Dr. Tolado, essentially abandoned his first position. He realized that his opinion in the first instance was inadequate, that he had used the wrong standard... Wait a minute. Are you now arguing your point about excluding this testimony or ignoring it? I didn't ask you that. I ask you, if we accept his statement about why there is a reason to combine this, isn't that substantial evidence? You're asking us to ignore it. Your Honor, I'm asking you to consider the totality of the record. But that's not our job, to consider the totality of the record anew and reach a new conclusion. Our job is to look at the Board's conclusion, which was that there was a motivation to combine here, and then look at the record to see if there's evidence that supports that conclusion. Of course, we look at the record to see if there's evidence that detracts, but we don't make that decision anew. If there's any evidence that supports the Board's conclusion, that a reasonable person could conclude supports it, we have to affirm, don't we? That's the standard of review. I agree that if that was the situation below, that you would have to affirm, but that's not the circumstances below. The PTAD panel did not consider the totality of the record. You do not have a record. Let's assume I disagree with you about that, because I think they looked at everything here, and they wrote an opinion that, for better or worse, says what it says, but it looked at all the evidence before them, may not have gone through it at all in detail, and said there's a motivation to combine here, see expert opinion. Well, Your Honor, there's still room for a mistake, so there's still room for the PTAD panel. That's what I'm trying to ask. What is the mistake? You want me to say that the expert's opinion is not good enough opinion, that it should have been disregarded under Daubert or excluded somehow? You didn't make enough objections to that. Or do you just want us to say we're not going to look at the expert's opinion, even though that is on the record and can support substantial evidence? Well, what we think at a minimum should have been considered below is the evidence that was destroyed, that wasn't available in the record. The evidence that was destroyed would have shown that the expert's opinion in the first… Well, that's a different argument, right? That's an argument that we should have excluded his opinion or excluded part of his opinion, but the Board recognized that problem and said specifically it wasn't relying on the paragraphs that related to that issue, right? So that is not a problem. If you're now saying they should have excluded his opinion altogether, you didn't preserve that argument. I'm not saying they should have excluded. I'm saying they should have considered it. They should have recognized that there was test evidence. They did recognize it and said they weren't considering that part of the case because you'd moved to exclude those paragraphs. We moved to exclude his opinions that were insufficient, and the insufficient opinions were what he refused to produce, that he continued to criticize our expert's opinion that there is no par problem. The first part of this case devolves down into whether there's a motivation to combine. That's not the part of his opinion that we're talking about that the Board relied on for motivation to combine, is it? We're talking about a different part of his opinion, which you didn't move to exclude. We didn't move to exclude it because it wasn't there. It was concealed from us. It's not part of the opinion that the Board relied on in finding a motivation to combine. Your Honor, let me – Just move on. You're not going to change my mind on this. Apart from that evidence that was or was not excluded improperly, if we move on and we ask ourselves, does Shiley disclose a par problem? And what about where Shiley does disclose? Now, granted, it doesn't use the word par, but it does say that Shiley discloses that the invention is applicable to other kinds of multi-carrier and multi-channel signaling, as will be understood by those skilled in the art. Wouldn't a person skilled in the art look at that and say, okay, I can address the problem in Shiley by scrambling techniques, and that gets us to where we are today? I mean, that's a motivation to combine there, isn't it? But, Your Honor, that presumes that Shiley would be recognized as having a par problem, and it would not be. And the fact that Petitioner's expert destroyed the evidence would have shown that definitively, that there is no par problem. Petitioner's expert pivoted. He put in a vague opening opinion. He recognized, based on the opinion of a patent owner's expert, that it was insufficient, that you have to gauge a par problem with respect to something. Saying increased par or high par has to be, there has to be a bar to gauge whether that is an issue and whether there could be any improvement. So the way that a Shively modem is designed, and it's according to the ADSL standard, and the ADSL standard is mentioned in both Shively, the prior reference, and in our patent. But Shively presumes that there's a problem with sending the same bit of information over multiple carriers. Shively doesn't describe it as a problem. That's actually Shively's solution. Shively's solution is that when there are fewer, so there's roughly 256 carriers. It's a solution to what problem? It's a solution to the fact that you have carriers that have a low signal-to-noise ratio or a low, they have too much attenuation, and therefore the carriers are either totally unusable, and that's more than half of the carriers in Shively. More than half of them are totally unusable, and that's the basis for our experts saying that there could never be a power problem because the amplifiers will be designed, if you will, and I'll try to analogize this. Let's say that the amplifiers are designed to go to 10. When Shively eliminates half of its carriers, because that's what its technique is for, its technique is for when you've eliminated carriers and your data rate drops, what Shively's technique is for is using carriers at the margin of usable and unusable to use those to squeeze through a few additional bits. What it does is it combines carriers together, for example, a group of four, uses the small little SNR margin that it has available, and squeezes through an additional bit. What that does is that creates repetition, and we agree, as our experts said, that that will create a small uptick in PAR, a small uptick in PAR. However, that small uptick in PAR is a grain of sand on the beach. Why did that small uptick in PAR sustain for a lot of us? No, it's not, because their expert understood, he knew that the only way an uptick in PAR becomes a problem or becomes something that you can improve on is if it causes clipping above the acceptable rate and the standards. Where in the record are you relying for that? I understand your argument to be that the kind of PAR increase that you see in Shively isn't significant enough to present a PAR problem, and it sounds as if you're saying that Dr. Tolado agreed with that, but where in the record are you relying on for that support? Your Honor, what I'm saying is it's a tacit agreement. Because he pivoted in his reply declaration and decided to put in simulations and, in fact, said that the only way one of skill in the art would understand whether you have a PAR issue would be to run these simulations, he ran MATLAB simulations, and there's a statement by Dr. Tolado that the only way one of skill in the art would understand whether there is an uptick in clipping rate is to run a simulation. So he ran the simulations. He ran a simulation on an 18,000-foot loop, which is what Shively disclosed. Shively's technique is for long loops, 18,000 feet or longer, where you're going to have impaired carriers. He ran that simulation and then destroyed evidence of it. I understand that. I just wanted to know where, you know, we've got a situation where the board has said that it's going to rely on certain things and it's not going to rely on other things. Assuming for a minute that we agree or we're not going to change the board's evidentiary determinations, where does your argument go from there? Where is your argument to support the idea either that Shively doesn't have a PAR problem or that Stoffler somehow is supposed to be addressing a PAR problem? Well, Your Honor, can I return to the first point you made there? The problem that we have is when the board says— Incidentally, you're into your rebuttal time now. Thank you, Your Honor. Let me just finish this one point. So the problem we face is when the board says, we're not going to rely on the evidence that would have favored patent owner. We're not going to rely on the simulation evidence of an 18,000-foot loop that would have favored patent owner and pretend that that didn't happen, pretend that the expert didn't run that simulation and didn't realize that it would have favored us and therefore concealed it. When they say we're not going to rely on that, that doesn't seem right. Didn't you move to exclude that evidence? We didn't move to exclude that evidence. We moved to exclude the 12,000-foot simulation that we said was a cherry-picked scenario that had nothing to do— And they said they weren't going to rely on the evidence you moved to exclude. That's correct. They didn't rely on the 12,000-foot scenario either, but our point is that when they— They didn't rely on the evidence that didn't exist? Because, in your view, you destroyed it? Well, Your Honor, I think the record is very clear that— Did you ask for the board to draw an adverse inference from that? We did, Your Honor. And they declined, right? They did decline. And that kind of evidentiary determination is an abusive discretion standard, isn't it? Correct, Your Honor. We believe it's an abusive discretion, but what it led to is it led to an incomplete record that the panel— So the panel refused to address the entirety of the record. What they're supposed to— What the panel is supposed to address— I'm not sure what they refused to address. They knew about this evidence. They decided it didn't change their mind. You made all these arguments, which are all completely factual arguments to the board, and they disagreed with you. And now you're saying, well, the board should have looked at this part of the record instead of the part of the record they looked at. That's not what we do on a substantial evidence review. The law is that they're supposed to consider the entire record, including evidence that detracts from their ultimate conclusion. Can I ask you a question about Dr. Toledo's declaration? And the board's determination of obviousness. I just want to understand what you think the board relied on. I mean, I read the board as relying on Stopler itself, Shively itself, and Dr. Toledo's declaration. Is that providing the support for why one would have been motivated to combine Shively and Stopler? Do you agree with that? I agree that they're relying on, in part, Shively itself, but it's not Shively alone, because Shively does not say I have a PAR problem. There is no discussion of PAR in Shively whatsoever. They're relying on what I believe is tainted testimony of an expert that says because there's an increase, you would try to solve that. There is no increase that needs solving. Again, your amplifier goes to 10, and if you're operating at 5, even if you have a slight uptick to 5.1, there is no motivation of any kind to go fix that. You've already got a 10. What about Stopler? Do you think Stopler is addressing PAR? Stopler, again, does not mention PAR, does not mention peak-to-average power ratio, doesn't mention any problems with clipping. What evidence do you think the board relies on to conclude that Stopler actually teaches a technique for solving PAR? Again, they rely on the testimony of Dr. Toledo that we believe is tainted, his exclusive say so. Assuming it's not tainted, do you think his testimony is adequate to support that point? I don't believe it's adequate because what he didn't address adequately is that Stopler does not describe a PAR problem. Instead, what Stopler describes … But he does describe scrambling. He does, but he describes a single-frequency interfere problem, and the only way … Assuming for a minute that it … I know you've got this technical argument that it's just a single frequency, but assuming for a minute the board got it right on that point, do you also have an argument that Toledo doesn't teach the use of its technique for solving PAR problems? Yes, Your Honor. Stopler does not describe using its techniques to solve a PAR problem. That's true. Do you think there's any evidence that the board relied on for that conclusion? I don't believe that there is any other than the say so of Dr. Toledo. He's an expert in the field. Why can't he just say so? Well, he can't just say so. He needs to have facts and data that back up his opinion. Of course, we can't just let experts say anything they want and treat that as fact, because it's not fact. The fact is the record itself, the prior art references themselves, and logical, informed opinions of experts. You're down to, like, 37 seconds, and we'll restore you back to two minutes. Thank you, Your Honor. Good morning. May it please the court, Theo Foster on behalf of Appalese. I believe the court well understands the standard of review here and seems to understand the record. Why would a POSA even look at a chip if it doesn't deal with PAR, doesn't even mention PAR? I mean, what is it that would attract a POSA to look at it? So I'm not sure I completely understand your question, Judge Reina. Are you asking why a person of ordinary skill would look at applying Shively's technique to a DSL modem in general? Why would, on the motivation to combine. Yes. Why would a POSA have a motivation to combine Stopler with Shively? So the motivation to combine rests on three facts. And looking at Shively, does it mention PAR? Does it deal with PAR? Shively does not discuss PAR, but as the board found, and this is in the appendix at page 29, the board found that persons of skill in this field were well aware of the issues and the potential problems associated with the high peak to average power ratio that are intrinsic to these multi-carrier communications. But that's PAR. You're now going back to PAR, the high peak ratio, but that's not what Shively is about. Shively is about increasing the data rate through the communication line. That's at the top of column eight of Shively. It describes increasing the data rate. So that's the reason that you would use Shively in the first place. It makes DSL modems faster, and the board agreed with that. Go ahead. I'll ask my question in a minute. The problem with what Shively is doing is that Shively's technique of multiple carriers will cause those carriers to constructively interfere. They will cause high peaks, and that increases the PAR. The blue brief essentially agreed with that technically. A high peak does not necessarily mean a PAR problem. So the phrase PAR problem is appellant's rephrasing of the motivation to combine that sidesteps what the board actually found. The board's finding was that Shively's technique increases PAR. The question of whether or not that causes clipping is a second question. But an increase in PAR, there's substantial evidence here showing that an increase in PAR has many downsides. Clipping is just one of them. An increase in PAR is also associated with an increase in equipment size, in equipment cost, power consumption. The problem that Shively seeks to solve is not clipping, correct? Shively is trying to solve the problem of getting more bits down the line, of making modems faster, and it has a technique for doing that. What about Stopler for a minute? I understand your position on Shively, that it doesn't say that it has a PAR problem, but you're saying that it at least increases PAR so it could potentially have one. But what about Stopler? I mean, Stopler doesn't say anything about solving PAR, nor is there anything in the record other than Dr. Gelato's testimony that looks at Stopler and says, oh, it seems as if this would be a good idea to try to do this phase shifting in order to be able to avoid this problem. But neither Stopler nor anything else says that that's a solution. Judge Stoll, the art has to be looked at through the eyes of the person of ordinary skill, and that's what Dr. Gelato is bringing to this case, is he's looking at it and explaining to us how skilled engineers familiar with these systems look at these references. This is my concern, and I appreciate your pointing this out, that I do think it comes down to Dr. Gelato's testimony. I agree with you. But why isn't it conclusory on this point? I think it's not conclusory because he explains . . . Can you point to me . . . let's walk through the appendix, because you can maybe identify for me where you think this is specifically addressed. So specifically with respect to why a person of ordinary skill in the art would have seen Stopler's technique as reducing PAR? Right. Is that point Judge Stoll? Right. I think it's like at page 2928 to 2929. You said 2929? I think the part of his declaration that you would be looking at, if there is any support, would be at 2928 to 2929. So the board at page 22 in the appendix cited a variety of evidence, including the testimony of TQ Delta's Dr. Short, to support their finding that Stopler's phase scrambler operates on single symbols one at a time, and that that technique then reduces PAR. But where is their disclosure that that reduces PAR? That's the key that I can't find anywhere. So on page 22, the board at page 22 in the appendix, the board citing Dr. Short's testimony, stated that it agreed that Stopler is referring to phase scrambling QAM symbols. So a QAM symbol is the symbol transmitted on one carrier out of the multiple carrier system. So every carrier then is being phase scrambled. I have no dispute with that. I think there's substantial evidence to support the board's finding on that. What I'm asking you about is something different. What I'm asking you about is, where is there any evidence at all that shows that what Stopler is doing reduces the PAR problem, other than the patent itself? Okay. If we look, for example, at the blue brief at pages 10 and 11. This is the blue brief now? Yes. I mean, what about in Dr. Tolado's declaration? Are you relying on that at all? Look at page 2928, the last two sentences. The last two sentences on 2928, so paragraph 67? Yes. Yep. My books are faster than your iPad, as usual. Yes. I may need to go back to paper. You need to go back to something that allows you to have the record before you so that you can discuss it with us. Do you not have this in front of you? I have the record, Judge Hughes, yes. Well then, why don't you answer Judge Stoll's question about whether that supports the conclusion that Stopler teaches of solving a PAR problem. It says paragraph 67 says, Stopler provides a solution for reducing the PAR of a multi-carrier transmitter. Where is the support for that? Stopler doesn't even mention PAR. So I'm looking for support for why that is so. So Dr. Tellato's testimony is that the increase in PAR from Shively comes from the carriers being phase aligned because the same data is being sent on those same carriers. So because the same data is there, it's the same symbol, they phase align and they cause a peak. The phase scrambling in Stopler undoes that phase alignment. And when the phases are not aligned, then the increase in PAR goes away. That's what Dr. Tellato was explaining. That's what the board found and explained in its opinion. In other words, because Shively's problem is caused by phase alignment, the solution is to not have it aligned anymore. Yes. And I'm supposed to get that from what part of Dr. Tellato's? Is that further in paragraph 67 that you see that? So at the top of page 2929, the next full sentence, it states a proceed would have recognized that by randomizing the phase of each subcarrier, Stopler provides a technique that allows two or more subcarriers in Shively's system to transmit the same one or more bits. Shively's technique is still implemented, but without those two or more subcarriers having the same phase. Since the two subcarriers are out of phase with one another, the subcarriers will not add up coherently at the same time, and thus the peak to average power ratio for the overall system will be less than in Shively's original system. Where is the support that they would have recognized that a proceeder would have recognized by randomizing the phase of each subcarrier Stopler provides a technique? Why is there, why would a proceeder have recognized the desire to randomize? So if we look at the board's opinion at page 29, the board addressed the question of whether or not a person of ordinary skill in the art was familiar with peak to average power ratio as a potential problem in multi-carrier solutions, or multi-carrier communication systems, and what it meant, where it comes from. And the board found that there was substantial evidence to support that, including the board cited to the statements of Dr. Short, who stated that engineers knew how to design these systems to account for the possibility of high par, and they also pointed to the ANSI standard, which described the fact that high par. Right, I recognize that par is a problem. What about, I'm not supposed to, and I cannot consider, of course, the other articles, including Dr. Tolado's thesis. We can't consider any of that, because the board did not consider any of it, right? The board did not consider it, and therefore dismissed the motion to exclude that. I would point out that during Dr. Tolado's first deposition, he pointed the patent owner to his thesis and indicated that they should go look at his thesis and look at the papers he cited there, and stated in his first deposition that there was a lot of support for his statements that phase scrambling was a well-known technique. However, the problem is that we can't consider that, because the board didn't consider it, right? You cannot consider the specific references that he pointed to. And his testimony, as I understand it, the board also said it wasn't going to rely on his deposition testimony. The board did not rely on portions of his second deposition testimony. His first deposition testimony, which TQ Delta did not object to and did not move to exclude, is when he stated that phase scrambling was the... Can you give me a cite for that? Yes, ma'am. Thank you. Appendix page 3860, lines 14 and 15. Dr. Tolado was asked a series of questions about techniques for reducing PAR that he knew about, and he gave several examples. Then he pointed them to his thesis and said that there were still further examples there. And then on lines 14 and 15, he stated, phase scrambling was probably the most popular way. Did the board rely on this testimony at all in making its determination that Stockler discloses solving a PAR problem? I do not believe the board cited this testimony. The last issue I'd like to just briefly address in my remaining time, the red brief accused Dr. Tolado of dishonesty, and because I believe he's an honorable man, I'd just like to point out that TQ Delta has not identified any statements in his deposition testimony that it believes were untruthful, and they have not identified any evidence that Dr. Tolado was under an obligation to disclose that he concealed. Okay. For any other issues, we'll rely on our briefs. Thank you. Mr. McAndrews, you have two minutes. Thank you, Your Honor. I just want to briefly address the issue of whether there was substantial evidence of record to support looking to Stockler to try to solve a problem when Stockler itself does not describe itself as solving that problem. And there was reference to some deposition testimony. Again, the problem with that deposition testimony is that the panel did not rely on that deposition testimony. The other part about it is that it's just a vague reference to this general notion that possibly you could do phase scrambling. What's not acknowledged there is that we had no opportunity to respond to that. There is no detailed expert opinion disclosed as a basis for combining whatever that part is. When you say that Stockler doesn't show anything about reducing a PAR problem, you're talking about the reference on its face and its specific teachings, right? Not Dr. Tolado's view of what PAR does. That's correct. Dr. Tolado has a different view than the panel. And isn't that his job as an expert to read the references and determine what he thinks a skilled artisan would do? It is, but that should be an honest and informed opinion, and we believe that Stockler... Stop talking about this dishonesty stuff. I don't care. I'm going to accept his opinion for what it's worth, for what is true. So address his opinion head-on instead of trying to get us to ignore it. He says, in the parts we just read from the record, Stockler provides a solution for reducing PAR. He goes on to explain what a PCETA would have recognized. And then he explains what Stockler does, and he then says in the following statement, combining Stockler's Fade Scrambler and just Shibley's Transmitter would have been a relatively simple and obvious solution to reduce PAR. Why isn't that substantial evidence? Do you think something more is required, that he has to support his conclusions with independent evidence from the record? I believe that independent... Do you point to passages in Shibley and Stockler that actually specifically talk about it? Because that seems like the old teaching suggestion and motivation test that the Supreme Court got rid of. No, Your Honor. What we're saying is that because on its face Stockler does not mention any PAR, because of that, there should be some other record evidence. There must be some other substantial evidence of record that would show that one of skill in the art isn't just going to take Shibley. Let's assume for a moment that Shibley has a PAR problem. Isn't that what his testimony says? But his testimony is essentially he's created prior art. He's created out of whole cloth a category of prior art. No, he's read the two references, and he says this is what a skilled artisan would think about them. There is no evidence of record that any skilled artisan other than... Except his statement. Except his statement would believe that... Are you saying that expert testimony alone can't provide substantial evidence, that you have to look to the teaching of a specific reference? I'm saying that expert testimony cannot take the place of prior art, and what we don't have is any prior art of record that says I am... That seems inconsistent with KSR to me. So what we don't appear to have of record is any prior art that says I am going to solve a peak-to-average power ratio by performing phase scrambling. That is not in the record. That is specifically what the Board said that they would not consider, and, by the way, had we gone and considered that, there would have been all sorts of problems with those references, as we were prepared to point out. Again, that's not in the record. I'm not going to go into that. And given the time constraints the panel has today, I'm going to rest. Thank you, Your Honors. Thank you very much, Mr. McGinnis.